# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF MISSOURI
# CENTRAL DIVISION

| | |
|---|---|
| HOPE QUAINTANCE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 2:17-cv-04007-NKL |
| ) | |
| CITY OF COLUMBIA, COMO ) | |
| CONNECT, ) | |
| ) | |
| Defendant. ) | |

## ORDER

Pending before the Court is Defendant City of Columbia-COMO Connect's Motion for Summary Judgment, Doc. 51. For the following reasons, the motion is granted.

**I.  Background[1]**

Plaintiff Hope Quaintance brings this suit pro se, alleging that her former employer, Defendant City of Columbia-COMO Connect ("Columbia"), discriminated against her on the basis of her race, gender, and disability, and in retaliation for her complaints of harassment in the workplace.

Beginning in February 2013, Quaintance worked for Columbia as a temporary bus driver. Her route operated on the University of Missouri, Columbia campus, and therefore she worked only when the students were present. When students were away during the summer, Quaintance and the other temporary bus drivers would be laid off, but when the students returned in the fall, Quaintance and the other temporary bus drivers would be recalled. Throughout her tenure, Quaintance alleges she was subject to harassment from her co-workers. As a result of the

---

[1]  This section includes disputed and undisputed material facts. Where facts are disputed, the Court views them in the light most favorable to the Plaintiff.

harassment Quaintance often felt physically unwell. She filed a complaint with her supervisors on April 4, 2014.

On May 8, 2014, Quaintance left work early to visit her primary care doctor. Though she was told that her blood pressure was high, she was released to return to work with no restrictions. However, Columbia requires all bus driver candidates to satisfy U.S. Department of Transportation ("DOT") medical requirements, including baseline standards related to blood pressure. Additionally, according to a City of Columbia ordinance, employees may at any time be required to undergo medical examinations to determine their fitness and continued ability to perform the essential functions of their job. Thus, when Quaintance informed her supervisor about her blood pressure results, she was removed from bus driving duty and required to undergo a "fitness for duty examination."

On May 14, 2014, Quaintance visited Dr. Michael Szewczyk, a certified DOT Medical Examiner and Columbia's medical advisor for DOT and public safety employees. As part of her fitness for duty exam, Dr. Szewczyk requested the medical records related to Quaintance's May 8, 2014 doctor visit. Upon reviewing the records, he learned that Quaintance has a history of bipolar disease, and that she was not receiving treatment. Quaintance told Dr. Szewczyk that she felt it was not bipolar disease but rather attention deficit disorder. He explained that she could satisfy DOT requirements regardless of whether it was bipolar disease or attention deficit disorder, but either way she would need to establish care with a mental health professional, be stable, and be cleared to operate a commercial vehicle by both a mental health professional and Dr. Szewczyk.

Dr. Szewczyk returned a "fit for duty authorization form" to Columbia stating that Quaintance could return to work, but she was specifically restricted from driving because she

needed additional medical treatment. A follow up exam was scheduled for July 15, 2014, to confirm that she was proceeding as necessary to regain her DOT certification. That appointment was ultimately cancelled and never rescheduled.

Quaintance was issued a recall date for August 18, 2014. However, on August 25, 2014, she received a letter from Columbia stating that because she was not DOT certified, she was not eligible to be recalled back to work.

## II. Discussion

Quaintance brings this lawsuit alleging employment discrimination under the Americans with Disabilities Act and Title VII of the Civil Rights Act. She alleges that she was discriminated against due to her "disability and/or [her] record of disability," due to her race and gender, and in retaliation for her complaints of harassment in the workplace. Doc. 1, p. 6.

The purpose of summary judgment is to "pierce the pleadings and assess the proof in order to see whether there is a genuine need for trial." *Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Therefore, to obtain summary judgment, the movant must show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). If the movant satisfies this burden, then the non-moving party "must set forth specific facts sufficient to raise a genuine issue for trial and cannot rest on allegations in the pleadings." *Ryan v. Capital Contractors, Inc.*, 679 F.3d 772, 776 (8th Cir. 2012) (quoting *Nw. Airlines, Inc. v. Astraea Aviation Servs., Inc.*, 111 F.3d 1386, 1393 (8th Cir.1997)).

In deciding whether to grant summary judgment, the Court must view all facts in a light most favorable to the nonmoving party, and give that party the benefit of all reasonable inferences drawn from the facts. *Robinson v. Monaghan*, 864 F.2d 622, 624 (8th Cir. 1989).

However, both parties must support their assertions "by citing to particular parts of materials in the record . . . or showing that the materials cited do not establish the absence or presence of a genuine dispute." Fed. R. Civ. P. 56(c)(1). Quaintance does not address Columbia's section of uncontroverted facts, nor does her response provide its own. Moreover, despite relying on new facts, Quaintance does not support any of her factual assertions by citing to depositions, documents, affidavits or declarations, as required by Federal Rule 56.[2] Indeed, her response does not cite to the record at all.[3]

Columbia has also represented to the Court that it submitted a written request to admit to Quaintance, which she did not answer. When a party serves a written request to admit, every matter included in that request "is admitted unless, within 30 days after being served, the party to whom the request is directed serves on the requesting party a written answer or objection addressed to the matter and signed by the party or its attorney." Fed. R. Civ. P. 36(a)(3). "A matter admitted under this rule is conclusively established unless the court, on motion, permits the admission to be withdrawn or amended." Fed. R. Civ. P. 36(b). Quaintance does not dispute Columbia's representation, and has not moved for the Court to withdraw or amend the admissions. Therefore, the Court must treat the following as conclusively established:

> [Columbia] took no action against [Quaintance] in retaliation for [Quaintance] making a complaint on or about April 4, 2014, to Natisha Mack, Human Resources Manager.
>
> [Quaintance] was pulled from driving a bus on May 12, 2014, pending the results of a fitness for duty examination.

---

[2] In a previous Order, the Court explained to Quaintance that she could prepare and submit an affidavit to support the factual assertions in her response. *See* Doc. 56.

[3] The only documents attached to Quaintance's response are a single medical record from six months after her termination, one page of an "Authorization for Release of Information" form, and a document that lists her blood pressure readings from May 2014 but provides no other information. Quaintance does not cite any of these documents in her response.

Dr. Szewczyk certified [Quaintance] as not medically capable of returning to the full duties of the Bus Driver position.

[Quaintance] never received a fitness for duty evaluation after May 14, 2014.

[Quaintance] was not DOT certified as of August 18, 2014.

As of August 18, 2014, [Quaintance] had not been evaluated and released as fit for duty.

[Quaintance] was told by Kathy Baker, City of Columbia Human Resources Manager, that DOT certification is required for all Columbia Transit Bus driver positions.

[Quaintance] was also told by Kathy Baker, City of Columbia Human Resources Manager, that [Plaintiff's] lack of DOT certification was the reason [she was] not eligible to be recalled to work on August 18, 2014.

[Quaintance] was not treated differently than similarly situated employees for the City of Columbia.

Doc. 52-7, pp. 3-6.

### A. ADA

Columbia argues it is entitled to summary judgment on Quaintance's ADA claim because she has not established a prima facie case of disability discrimination. Alternatively, if she has, Columbia maintains that it has articulated a legitimate, non-discriminatory reason for its decision not to recall her to work.

To support an ADA claim, Quaintance must either offer direct evidence of discrimination or satisfy the *McDonell Douglas* burden-shifting scheme. *See Ryan*, 679 F.3d at 776 (citing *Kozisek v. Cnty. of Seward, Neb.*, 539 F.3d 930, 935 (8th Cir. 2008)). Direct evidence is "evidence showing a specific link between the alleged discriminatory animus and the challenged decision, sufficient to support a finding by a reasonable fact finder that an illegitimate criterion actually motivated the adverse employment action." *Libel v. Adventure Lands of Am., Inc.*, 482 F.3d 1028, 1034 (8th Cir. 2007) (quoting *Griffith v. City of Des Moines*, 387 F.3d 733, 736 (8th

Cir. 2004)). Under the *McDonnel Douglas* burden-shifting scheme, a plaintiff may use indirect evidence to support an inference of discriminatory intent. *See Griffith*, 387 F.3d at 736. The plaintiff must first set out a prima facie case of discrimination; then the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for the adverse employment action; and finally, the burden shifts back to the plaintiff to show that the proffered reason is merely a pretext for discrimination. *McDonnell Douglas Corp. v. Green*, 411 U.S.792, 803 (1973); *see also Ryan*, 679 F.3d at 777.

Quaintance has not produced any direct evidence of discriminatory animus motivating Columbia's actions. As such, she must articulate a prima facie case of disability discrimination under the *McDonnell Douglas* test. Under the ADA, to establish a prima facie case, Quaintance must show "that [she] was a disabled person within the meaning of the ADA, that [she] was qualified to perform the essential functions of the job, and that [she] suffered an adverse employment action under circumstances giving rise to an inference of unlawful discrimination." *Ryan*, 679 F.3d at 777.

Quaintance has not established a prima facie case because she has not shown that she was qualified to perform the "essential functions" of the job of temporary bus driver; namely, the ability to drive the bus safely. It is undisputed that Quaintance was pulled from bus driving duty pending a fitness for duty examination, and that a medical examiner determined she was "NOT medically capable of returning to the full duties of the position." Doc. 52-3, p. 3 (emphasis in original). It is also undisputed that at the time Quaintance was due to be recalled back to work, she still had not been cleared to drive by any doctor. Doc. 52-1, p. 17. Quaintance has not produced any evidence or arguments to dispute the doctor's opinions, or that would allow a reasonable jury to find she was qualified to drive a bus.

Even if Quaintance could articulate a prima facie case of disability discrimination, Columbia has offered a legitimate, nondiscriminatory reason for terminating her employment: it has a policy that requires all bus drivers to be DOT certified. All Columbia bus driver candidates undergo DOT medical evaluations, and must meet baseline DOT requirements. Among the requirements, drivers must not have a psychiatric condition, "which, in the opinion of the examining physician, might impact the candidate's ability to perform essential DOT driver duties." Doc. 52-3, p. 5. Quaintance does not dispute that she was not DOT certified at the time she was terminated from her position, and indeed by failing to respond to Columbia's request for admission, she has admitted that she was terminated due to her lack of DOT certification. Columbia argues that it declined to recall Quaintance to work because she was not DOT certified. Quaintance has offered no argument or evidence that Columbia's explanation is a pretext for discrimination.

Quaintance has not offered any direct evidence of disability discrimination, and fails to assert a claim under the *McDonnell Douglas* framework. Therefore, summary judgment is granted for the Defendant.

**B.     Title VII**

Quaintance's remaining claims arise under Title VII of the Civil Rights Act. The complaint indicates that "the conduct complained of" involves: "termination of employment," "terms and conditions of employment differ from those of similar employees," "retaliation," and "harassment." Doc. 1, p. 5. However, Quaintance elaborated, and stated that she believes she has been "discriminated against due to [her] race, black; sex, female, and in retaliation for [her] complaints of harassment in the workplace." Doc. 1, p. 6. Therefore the Court will treat the

7

complaint as raising only discrimination and retaliation claims, because the "conduct complained of" is incorporated into each.

### i. Discrimination

Quaintance's Title VII discrimination claims are analyzed the same as her disability discrimination claims. She may either present direct evidence, which requires "showing a specific link between the alleged discriminatory animus and the challenged decision," *Arraleh v. Cty. of Ramsey*, 461 F.3d 967, 974–75 (8th Cir. 2006), or, she may create "the requisite inference of unlawful discrimination through the *McDonnel Douglas* analysis, including sufficient proof of pretext." *Id.* at 975.

Quaintance has not offered any direct evidence of discrimination. Her response to this motion describes a handful of unpleasant interactions with her coworkers and supervisors. However, none of the alleged statements or conduct is based on any discriminatory animus. Indeed, not once does Quaintance's response even mention her race, color, or gender. Moreover, there is nothing that would allow a reasonable juror to find a specific link between the alleged statements and Columbia's decision not to recall Quaintance. Additionally, none of the assertions found in Quaintance's response are supported by citations to anything on the record.

In the absence of direct evidence, the Court evaluates her claims under the familiar *McDonnell Douglas* framework. *Id.* The *McDonnell Douglas* scheme applies to Title VII claims just as it does to ADA claims. *Compare Arraleh*, 461 F.3d at 967 (applying *McDonnel Douglas* to a Title VII claim) *with Ryan*, 679 F.3d at 772 (applying *McDonnell Douglass* to ADA claims). Plaintiff must first establish a prima facie case, and then the defendant may counter by articulating one or more legitimate, nondiscriminatory reasons for its decision. *Arraleh*, 461 F.3d at 975. If the defendant does, then the plaintiff is "left with the opportunity to

demonstrate that the proffered reason is not the true reason for the employment decision." *Id.* at 976 (quoting *Wallace v. DTG Operations, Inc.*, 442 F.3d 1112, 1120 (8th cir. 2006)).

Quaintance fails to assert a Title VII claim of discrimination under the *McDonnell Douglas* framework because Columbia had a legitimate, non-discriminatory reason for ending her employment. It is undisputed that Quaintance was not DOT certified to operate a bus at the time she was told she would not be recalled back to work. It is also undisputed that DOT certification is a requirement of any temporary bus driver for Columbia. Quaintance has not produced any arguments or evidence that Columbia's DOT certification policy is a pretext for discrimination. Indeed, Quaintance concedes that she is unaware of any employee for Columbia who was not DOT qualified and was allowed to drive a bus, and at her deposition she stated that she "couldn't imagine the city letting someone drive and [sic] they're not DOT qualified." Doc. 52-1, p. 22.

Quaintance offers no direct evidence of racial, color, or gender discrimination by Columbia, and has not produced any arguments or evidence that Columbia's DOT certification policy constitutes anything other than a legitimate and non-discriminatory reason for ending her employment. Therefore, summary judgment is granted for the Defendant.

### ii. Retaliation

To make out a prima facie case of retaliation, Quaintance must show: "(1) [she] engaged in protected conduct; (2) reasonable employees would have found the challenged retaliatory action materially adverse; and (3) the materially adverse action was causally linked to the protected conduct." *Weger v. City of Ladue*, 500 F.3d 710, 726 (8th Cir. 2007) (citing *Burlington Northern & Santa Fe Railway Co. v. White*, 548 U.S. 53 (2006)). Columbia concedes, for the purpose of this motion, that Quaintance made a written complaint of

harassment, which is a protected activity, and that she was not recalled to work as a temporary bus driver. However, Columbia argues that its "materially adverse action" was not "causally linked to her protected activity." *Id.*

The Court agrees. No reasonable juror could find that the decision not to recall Quaintance was based on the harassment complaint that she filed. Quaintance has offered no evidence of a causal connection between her complaint to HR and the decision not to recall her back to work. Moreover, Columbia has presented a legitimate non-discriminatory reason for its action, which Quaintance does not dispute. *See Haas v. Kelly Services, Inc.,* 409 F.3d 1030, 1035 (8th Cir. 2005) (citations omitted) (setting forth the burden-shifting framework). Additionally, as a result of Quaintance's failure to respond to Columbia's Request for Admissions, the Court must deem admitted that Columbia "took no action against" Quaintance in retaliation for her complaint to human resources. Doc. 52-7, p. 3. Therefore, summary judgment is granted for the Defendant.

## III. Conclusion

For the reasons set forth above, Defendant's Motion for Summary Judgment, Doc. 51, is granted.

/s/ Nanette K. Laughrey
NANETTE K. LAUGHREY
United States District Judge

Dated: January 2, 2018
Jefferson City, Missouri